## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PAUL JOSEPH ZEEDYK, | § | |
| (TDCJ-CID #1608279) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-0781 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM AND OPINION

The petitioner, Paul Joseph Zeedyk, seeks habeas corpus relief under 28 U.S.C. § 2254,

challenging a 2009 state felony conviction for a third offense of driving while intoxicated.  The

respondent moved for summary judgment, (Docket Entry No. 11), with a copy of the state-court

record. (Docket Entry No. 10).  Zeedyk filed a response.  (Docket Entry No. 12).  Based on careful

consideration of the pleadings, the motion and response, the record, and the applicable law, this court

grants the respondent's motion and, by separate order, enters final judgment.  The reasons are set out

below.

### I.      Background

A jury found Zeedyk guilty of the felony offense of felony driving while intoxicated, third

offense. (Cause Number 09-03-02709-CR).  The court found true three enhancement paragraphs

alleging prior convictions, one for theft (Cause Number 526596), and two for burglary of a building

(Cause Numbers 14,369 and 81-202-C).  On October 16, 2009, the court sentenced Zeedyk to 30-

year prison term.  The Ninth Court of Appeals of Texas affirmed the conviction on April 27, 2011.

*Zeedyk v. State,* No. 09-09-00536-CR (Tex. App. - Beaumont 2011, pet. ref'd) (not designated for

publication).  The Texas Court of Criminal Appeals refused Zeedyk's petition for discretionary review on September 14, 2011.  Zeedyk filed an application for state habeas corpus relief on May 11, 2012, which the Texas Court of Criminal Appeals denied with written order, on the trial court's findings, without a hearing, on December 12, 2012.  *Ex parte Zeedyk,* Application No. 29,845-03 at cover.

On March 14, 2013, this court received Zeedyk's federal petition.  Zeedyk contends that his conviction is void for the following reasons:

(1)   The trial court abused its discretion by:

    A.   finding that the State had proven the enhancement paragraphs;

    B.   admitting out-of-court statements in violation of the Confrontation Clause; and

    C.   striking a juror from the panel.

(2)   Trial counsel, Jarrod Walker, rendered ineffective assistance by:

    A.   failing to maintain that Zeedyk did not have prior convictions;

    B.   failing to request a lesser-included offense instruction;

    C.   failing to object to the refusal to allow the jury to consider bullet points from the State's closing; and

    D.   failing to object to an improper jury charge.

(3)   Appellate counsel, Grant Stevens, rendered ineffective assistance by filing an *Anders* brief; and

(4)   The judgment of conviction was void because there was insufficient evidence to prove every element of the charged offense.

2

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8d).[1]

These claims are analyzed based on the applicable law and the record.

## II.     The Applicable Legal Standards

Zeedyk's petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)

---

[1]  Zeedyk denied that he was raising as a separate ground for relief a claim that the Texas Court of Criminal Appeals abused its discretion in denying his state habeas application.  (Docket Entry No. 12, Petitioner's Response, p. 3).

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. A federal court considers whether the state court's application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). The state court's resolution of fact questions is "presumed to be correct . . . and [receives] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v.*

*Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, these findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Zeedyk is a *pro se* petitioner. *Pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Zeedyk's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III. The Claims of Trial-Court Error (Ground 1)

Zeedyk asserts that the trial court's errors made the proceedings against him unfair. A federal court reviewing state-court evidentiary rulings on a petition for habeas corpus grants relief only if the state-court error is so egregious as to make the trial fundamentally unfair. *Jernigan v. Collins,* 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied,* 508 U.S. 978 (1993). "A state court's evidentiary ruling presents a cognizable habeas claim only if it runs afoul of a specific constitutional right or renders the trial fundamentally unfair." *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir. 1994), *cert. denied,* 513 U.S. 1163 (1995). The challenged evidence must be crucial, critical, or highly significant in the context of the entire case. *Jernigan v. Collins,* 980 F.2d at 298; *Bridge v. Lynaugh,*

5

838 F.2d at 772; *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied,* 484 U.S. 842

(1987). The test for whether a trial error makes a trial fundamentally unfair is whether there is a

reasonable probability of a different verdict had the trial been properly conducted. *See Guidroz v.*

*Lynaugh,* 852 F.2d 832, 835 (5th Cir. 1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir. 1988).

### A.     The Claim of the Failure to Prove the Prior Convictions

Zeedyk argues that the trial court abused its discretion because the evidence at trial did not

prove that he was guilty of felony DWI.  The State had the burden of proving the two prior

misdemeanor DWI offenses  to obtain a conviction for a felony DWI.  The State offered two prior

misdemeanor DWI Judgment Sheets bearing the name Paul Zeedyk.  The State's expert witness

testified that the thumbprints were "illegible."  Zeedyk argued that the State's expert witness could

not match the thumbprints from the two prior judgment sheets to the thumbprint she took from

Zeedyk on the Monday before trial.  Zeedyk contends that the State did not adequately prove the

prior DWI convictions set out in the indictment.

The methods of proving prior convictions approved by Texas courts include: (1) testimony

of a witness who personally knows the defendant and the fact of his prior conviction and identifies

him; (2) the defendant's stipulation or judicial admission that he has been so convicted; (3) certified

copies of the judgment, sentence, and record of the Texas Department of Corrections or a county jail,

including fingerprints, with expert testimony identifying the fingerprints as the same as the

defendant's prints; or (4) the factfinder's comparison of records of the prior convictions with

photographs and a detailed physical description of the person convicted, with the appearance of the

defendant in court. *Daniel v. State,* 585 S.W.2d 688, 690–91 (Tex. Crim. App. 1979), *overruled on*

*other grounds by Littles v. State,* 726 S.W.2d 26, 32 (Tex. Crim. App. 1984); *accord Smith v. State,*

6

998 S.W.2d 683, 687 (Tex. App. - Corpus Christi 1999, pet. ref'd); *Fontenot v. State,* 704 S.W.2d 126, 127 (Tex. App. - Houston [1st Dist.] 1986, no pet.).  These methods are preferred, but not exclusive.  *Littles,* 726 S.W.2d at 32.

The State may prove a prior conviction by documents containing "sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted."  *Flowers v. State,* 220 S.W.3d 919, 921–22 (Tex. Crim. App. 2007).  "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these puzzle pieces fit together sufficiently to complete the puzzle."  *Id.* at 923.  The fact that the defendant's name on the prior judgments is different from the name of the defendant on trial is irrelevant if other evidence establishes that they are the same person.  *Rios,* 557 S.W.2d at 92; *see also Garza v. State,* 548 S.W.2d 55, 56 (Tex. Crim. App. 1977).

The jury heard testimony about the prior judgments.  Sergeant David Allen Davis, Jr., testified that he was employed by the Harris County Sheriff's Office, that he worked in the Classification Division, and that he was the custodian of all inmate records.  Sergeant Davis testified that when an inmate is booked into the HCJ, officers record the name, date of birth, height, and fingerprints, and take a photograph.  State's Exhibit 17 was a Harris County Automated Fingerprint Identification System AFIS Search Result.  Sergeant Davis identified Exhibit 17 as an arrest/print sheet.  It contained a photograph, which was of Zeedyk; fingerprints; the name (Paul Joseph Zeedyk); birth date (June 27, 1961); address (20104 Guy Odell Lane, New Caney, Texas 77357); arrest date (April 13, 2005); offense date (April 13, 2005); offense (DWI); social security number; and driver's license number.

7

State's Exhibit 18 was identified as a fingerprint card. It contained fingerprints and the same name, birth date, address, offense date, offense, social security number, and driver's license number information as Exhibit 17.

State's Exhibit 16 is a judgment against Zeedyk, based on a guilty plea, entered on July 8, 2005, in Cause Number 1297035 in County Criminal Court at Law No. 14 of Harris County. The offense date was April 13, 2005.

State's Exhibit 15 is a judgment against Zeedyk, based on a guilty plea, entered on August 25, 2005 in Cause Number 05-209444 in County Court at Law No. 4 of Montgomery County. The offense date was June 18, 2005. (Docket Entry No. 10-24, pp. 83-98).

Michael Wenzel, custodian of records at the Montgomery County Sheriff's Department, testified that it was standard practice at the jail to photograph and fingerprint all inmates upon entry into the jail. State's Exhibit 19 was a Montgomery County Sheriff's Office Booking Sheet that contained the following information: name (Paul Joseph Zeedyk); birth date (June 27, 1961); address (20104 Guy Odell Lane, New Caney, Texas 77357); arrest date (June 18, 2005); offense (DWI); and Zeedyk's signature. State's Exhibit 20 was a fingerprint card. The document contained the same name, birth date, and arrest date as Exhibit 19. (Docket Entry No. 10-24, pp. 72-82).

Leslie McCaulley, a crime scene investigator and latent print examiner for the Harris County Sheriff's Department, testified about the fingerprint evidence as an expert witness. McCaulley identified State's Exhibit 22 as an ink print she took from Zeedyk on the Monday before trial, September 14, 2009. These are the "known prints." McCaulley identified Zeedyk as the person from whom she took these fingerprints. McCaulley testified that the fingerprints on State's Exhibits 18 and 20 – the fingerprint cards dated April 13, 2005 and June 18, 2005 – matched the known prints

8

on State's Exhibit 22. Exhibit 20 had Paul Joseph Zeedyk's name and had a June 18, 2005 offense date. McCaulley testified that the fingerprints on State's Exhibit 17, a Harris County arrest/print sheet, matched those on State's Exhibit 18. McCaulley could not compare the thumbprint on State's Exhibit 15, a judgment against Zeedyk for a June 18, 2005 offense, entered on August 25, 2005 in Cause Number 05-209444, with the known prints on State's Exhibit 22.

State's Exhibit 14 was a certified driver's license record from the Driver Records Bureau of the Texas Department of Public Safety for Paul Joseph Zeedyk. This record showed June 27, 1961 as Zeedyk's birth date. This record also showed that Zeedyk's first DWI conviction was for an offense on June 18, 2005 in Montgomery County, with a conviction date of August 25, 2005. State's Exhibit 16 was a judgment in Cause Number 1297035 for Paul Joseph Zeedyk and for an offense date of April 13, 2005. The fingerprint card admitted as Exhibit 20 had Zeedyk's name and an offense date of April 13, 2005.

The certified driver's license record showed that Zeedyk's second DWI offense was committed on April 13, 2005. Zeedyk was convicted for this offense on July 8, 2005 in Harris County. The offense date on the judgment in State's Exhibit 16 matched the offense date on the fingerprint card admitted as State's Exhibit 18. The fingerprint on Exhibit 18 matched the known prints on Exhibit 22 and matched the fingerprint in Exhibit 17. The fingerprints in the two prior judgments matched the known prints in Exhibit 22 that she took from Zeedyk on September 14, 2009.

In sum, the jury had ample evidence showing that Zeedyk twice pleaded true to allegations that he had been convicted of DWI in Cause Numbers 1297035 and 05-209444. The jury also heard testimony that the fingerprints in Exhibits 16, 19, and 20 matched Zeedyk's known prints. Although

the State did not directly link Zeedyk to the DWI conviction in Cause Number 05-209444, the State presented the jury with ample evidence from which it could rationally conclude beyond a reasonable doubt that Zeedyk was the person convicted of DWI in Cause Numbers 1297035 and 05-209444. *See Flowers,* 220 S.W.3d at 923.

### B.    The Claim of Error in Admitting Hearsay Testimony

Zeedyk argues that the trial court erred in admitting hearsay evidence during the cross-examination of Zeedyk's daughter, Belinda Fath. Zeedyk refers to the Reporter's Record, Vol. III, p. 132. (Docket Entry No. 2, Petitioner's Response, p. 13). The cited page is defense counsel's direct examination of Ms. Fath. She testified that she was at the highway intersection when her father was arrested. She was later asked how she knew where to go. In response, she explained that her cousin, Johnny, called her and said that he saw Zeedyk falling asleep in his truck as he was turning onto the freeway. Ms. Fath's testimony about what her cousin told her is not testimonial and does not fall within the hearsay rule or the Confrontation Clause. *Crawford,* 541 U.S. at 59; *see also U.S. v. Polidore,* 690 F.3d 705, 710 (5th Cir. 2012) (noting that the Clause applies to "witnesses" against the accused – persons who "bear testimony" – and that "testimony" is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact.").

The prosecutor offered the audio recording of a 911 call by a woman named Paula Stevens, reporting Zeedyk's erratic driving. Arlen White, a deputy with the Montgomery County Sheriff's Office, testified that on January 23, 2009, he responded to a dispatch call to look out for a Chevy S10. Deputy White saw the vehicle, turned on his video camera, and began following. He saw that the vehicle was failing to stay in a single marked lane, almost hit a construction barrel, and almost hit a car. When Deputy White ordered Zeedyk to stop, he did so in the middle of the feeder road.

Deputy White thought Zeedyk had hit the guardrail. Deputy White asked for a driver's license or some type of identification, but Zeedyk gave him a personal check. Zeedyk also gave two different birth dates and nonresponsive answers to questions. Zeedyk was slouched in the driver's seat and his speech was thick and slow. Because Deputy White did not smell alcohol in the vehicle, he believed that Zeedyk was under the influence of some other intoxicant. (Docket Entry No. 10-21, pp. 10-15). He had a nurse take a blood sample after Zeedyk's arrest. Zeedyk also alleges that the trial court erred in admitting the name of a nurse who drew the blood sample after Zeedyk's arrest. The introduction of the name of the nurse who took blood from Zeedyk after his arrest is not error. And, based on careful review of the record, this court finds that the challenged evidence did not have a substantial and injurious effect or influence in determining the jury's verdict.

Zeedyk has failed to show that the trial court's admission of the alleged hearsay statements made his trial fundamentally unfair or that there was a reasonable probability that the verdict would have been different had the evidence not been admitted. Any error was harmless. *Brecht v. Abrahamson,* 507 U.S. at 623 (federal habeas relief requires a showing that a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."). The evidence against Zeedyk was overwhelming. Zeedyk has failed to show that the state court's decision rejecting this basis for habeas relief was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Zeedyk is not entitled to federal habeas relief on this claim.

C.    **The Claim that Zeedyk was Denied a Lawfully Constituted Jury**

Zeedyk claims that he was prejudiced by the trial court's decision to remove a juror, Ms. Mediola Robertson, after she had been sworn in. Zeedyk argues that once the parties had made their peremptory challenges and learned which jurors were not stricken, the jury was set.

The trial record shows that after the jury was sworn in, the State challenged this juror for cause. The State argued that she had been charged with assault to commit murder in 1972, about 37 years earlier, and it was unclear whether the charge was still pending. The trial court granted the State's challenge for cause after a colloquy with the juror. She explained that she accidentally shot her husband in 1971 during a struggle. She and her husband remained married. She had discovered that the assault charges were still pending a few years earlier. She thought she may have also been charged with attempted manslaughter but was not sure if that charge was still pending. The State argued that the age of the charges, the time it would take to search paper records, and the availability of another alternate, counseled in favor of dismissing the juror and seating the other alternate. (Docket Entry No. 10-20, p. 120). The trial court granted the State's challenge for cause. (*Id.* at 121).

Zeedyk alleges that the court erred. Zeedyk raised this claim in his state habeas petition. The state habeas court found as follows:

> 9. The State challenged for cause Juror No. 14, an alternate, after it discovered a previous criminal charge for a serious felony in her history. The discovery happened after the jury was empaneled but before testimony began.
>
> 10. This Court sustained the State's challenge for cause because there was no evidence presented that the charge, though remote in time, was not still pending.
> . . .

12

CONCLUSIONS OF LAW

> 4. The applicant was not denied a lawfully-constituted jury. He has not shown that a trial court's granting a challenge for cause against an alternate juror with a possibly outstanding criminal charge rises to the level of a due process violation.

(Docket Entry No. 10-29, pp. 40-41).

To show error in a trial court's grant of a state's challenge of a potential juror for cause, a defendant must demonstrate that the trial judge either: (1) applied the wrong legal standard in sustaining the challenge, or (2) abused discretion in applying the correct legal standard. *Jones v. State,* 982 S.W.2d 386, 388 (Tex. Crim. App. 1998). The erroneous excusing of a potential juror will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury. *Id.* at 394. "[T]he erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury." *Id.* at 394; *see also Gray v. State,* 233 S.W.3d 295, 301 (Tex. Crim. App. 2007) (holding that trial court's erroneous exclusion of potential juror for economic reasons did not merit reversal because defendant did not show he did not "receive a trial by an impartial jury comprised of qualified individuals"). A veniremember may be challenged for cause based on a conviction for misdemeanor theft or for any felony. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(2) (West 2011). Attempted manslaughter is a felony offense.

Here, Zeedyk does not show that he was deprived of a lawfully constituted jury. Zeedyk provides no argument or explanation of how removing this alternate from the jury deprived him of a lawfully constituted jury.

13

Zeedyk also alleges that the alternate juror was not sworn soon after selection. (Docket Entry No. 10-20, p. 109). The record shows that all of the jurors were sworn.

Even if the trial court erred in granting the State's challenge for cause, the record does not support an inference that this affected Zeedyk's substantial rights. TEX. R. APP. P. 44.2(b). A defendant does not have the right to have particular individual sit on the jury. A defendant's "only substantial right is that the jurors who do serve be qualified." *See Jones,* 982 S.W.2d at 393. If the jurors who serve are qualified, then the jury is lawfully constituted, the defendant's substantial rights are not affected, and reversal of the defendant's conviction based on the erroneous granting of a challenge for cause is not required. *Jones,* 982 S.W.2d at 394; *Moore v. State,* 54 S.W.3d 529, 538 (Tex. App. - Fort Worth 2001, pet. ref'd).

This court finds no error in the grant of the State's challenge for cause. If there was error, it was harmless. *See Gray,* 233 S.W.3d at 301; *Jones,* 982 S.W.2d at 394; *Moore,* 54 S.W.3d at 538. Zeedyk has not shown a basis for relief on this ground.

## IV.  The Claim of Ineffective Assistance of Trial Counsel (Ground 2)

An ineffective assistance of counsel claim requires a habeas petitioner to show that counsel's performance was deficient and that actual prejudice resulted. *Strickland v. Washington,* 466 U.S. 668, 68 (1984). Deficient performance is determined by an objective and deferential standard. *Kitchens v. Johnson,* 190 F.3d 698, 701 (5th Cir. 1999). "[S]crutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law

14

and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir.) ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Jones*, 287 F.3d at 331. To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Even if a petitioner shows that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

The state habeas court found that trial counsel, Jarrod Walker, and appellate counsel, Grant Stevens, were experience and qualified. The state court concluded that Zeedyk "failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel, either at the time of trial or at the time of his appeal. *Strickland v. Washington*, 466 U.S. 668, 669 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999)." (Docket Entry No. 10-29, pp. 40-41).

Under AEDPA, this court must give proper deference to the state court's determination that counsel gave effective assistance. *See Ladd v. Cockrell*, 311 F.3d 349, 351 (5th Cir. 2002). Because the state court properly identified *Strickland* as the standard, the "unreasonable application" prong of § 2254(d)(1) governs this court's review of the state court's decision on Zeedyk's ineffective counsel claims. *Bell v. Cone*, 535 U.S. 685, 694-695 (2002). This issue is whether the state court's application of *Strickland* was objectively unreasonable. *Id.*; *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003). Under § 2254(d)(1), a federal court has "no authority to grant habeas corpus relief simply because . . . a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236). "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

## A.    The Claim Based on Failing to Present a Consistent Defense

Zeedyk alleges that his trial counsel abandoned his defense strategy by admitting to the court that Zeedyk had prior DWI convictions. Zeedyk explains that throughout trial, counsel maintained that the State could not prove these prior convictions for enhancement purposes. The prosecution

16

made several attempts to prove the prior convictions, but Zeedyk's counsel countered each attempt. Zeedyk asserts that the State introduced two prior judgment sheets but the State's expert witness could not match the prints on the judgment sheets with the prints she took from Zeedyk before trial. Zeedyk argues that counsel defeated this strategy during closing arguments and became an adversary when he volunteered to the court that Zeedyk had prior convictions. A DWI offense with no prior convictions is a Class B misdemeanor with a punishment range from 72 hours to 180 days. The State used the two prior DWI misdemeanor convictions to enhance the Class B misdemeanor to a third-degree felony. The third-degree felony was enhanced to a first-degree felony based on three prior felony convictions, setting the sentencing range at 25 years to 99 or life. Zeedyk argues that if his counsel had not conceded the two prior convictions, he would have been tried for a Class B misdemeanor.

During closing argument, defense counsel mentioned the evidence of the prior convictions and cautioned the jury not to consider them as evidence of the charged offense. Defense counsel argued:

> [B]ut, first, let's talk about the extraneous charge. You are further instructed that if there's evidence before you in this case regarding the defendant  having committed an offense or bad act other than the offense for which he is charged, you cannot consider this evidence for any purposes unless you find beyond a reasonable doubt that the defendant committed such other offense or bad act, if any were committed. That probably should go on to talk about that you cannot consider these prior DWIs for any other purpose than jurisdiction. I told you I was worried about that during voir dire and I am still worried about it and so I am going to just put a bullet point on it. This is the Court telling you you cannot say got a DWI, got another DWI, now he's charged with DWI so he must have done it because he did it twice before. That's inappropriate. I am telling you, "Don't do it." The State is not disagreeing with me on that and the Court is telling you don't do that. So any juror, any juror that bring that point

17

up as to pass on whether or not he is driving while intoxicated on January 23rd of this year, tell him to cut it out, stop it, end of discussion right there. The only purpose that you are being asked to consider those other DWIs for is to pass on whether this Court has jurisdiction to hear this case, okay? So, hey, you make the decision beyond a reasonable doubt. Does he have two prior convictions? I'll agree that the whole process there got a little tedious; but you will look through there and you will figure it out and you will decide beyond a reasonable doubt that he's got two priors, okay, that's the only point. If the Court had jurisdiction at that point, then you consider the DWI. So, once again, just to hammer it home: You cannot consider the prior DWIs to pass on whether he was intoxicated in this particular case. That's the first big issue, but I think requires a little bit of explanation for you.

(Reporter's Record, Vol. III, pp. 155-57).

The state habeas court found:

> 11.   Walker did not concede that the applicant had prior DWI convictions during final argument; he made a conditional argument that If the jury believed that the applicant had been twice previously convicted of DWI, they were to consider those convictions only for jurisdictional purposes, and not for propensity purposes.
> . . .
>
> CONCLUSIONS OF LAW
> 6.   Walker was not ineffective in his closing arguments to the jury. Presenting a conditional argument is not deficient performance.

(Docket Entry No. 10-29, pp. 40-41).

The record shows that this decision reasonably applied federal law. In *Nixon v. Epps*, 405 F.3d 318 (5th Cir. 2005), the Fifth Circuit considered a similar claim based on defense counsel's closing argument. The court analyzed whether the argument was reasonable given the defense strategy:

> Counsel's simple, sincere request for sympathy and appeal to the jury's sense of religious compassion was in keeping with counsel's strategic decision to plead for their client's life rather than attempt to

18

re-argue the facts of the case they had just lost.  As already mentioned, this strategy, while ultimately unsuccessful, was a reasonable choice given the facts of the case and the age of their client.  Similarly, when defense counsel mentioned other "heinous, cruel atrocious crimes" during closing argument, this rhetoric was in keeping with the strategic decision to plead for Nixon's life. Contrary to Nixon's claim that this argument "all but invited a death sentence" (Pet'r's Merits Br. at 35), defense counsel was merely acknowledging the jury's verdict and asking for mercy. *See Stamps v. Rees,* 834 F.2d 1269, 1275 (6th Cir. 1987); *see also Florida v. Nixon,* 534 U.S. ----, 125 S. Ct. 551, 160 L. Ed.2d 565 (2004) (rejecting a claim of ineffective assistance where defense counsel strategically chose to concede guilt during trial and focus on begging for his client's life).

*Id.* at 327-28.

The Fifth Circuit has similarly held that defense counsel's decision to acknowledge that a defendant was not likeable to try to gain credibility with the jury was reasonable, *Clark v. Thaler,* 673 F.3d 410 (5th Cir. 2012), because "acknowledgment of aspects of the case can be a proper 'effort to bolster credibility with the jury.'" *Dowthitt v. Johnson,* 230 F.3d 733, 751 (5th Cir. 2000) (quoting *Kitchens v. Johnson,* 190 F.3d 698, 704 (5th Cir. 1999)); *see also Yarborough v. Gentry,* 540 U.S. 1, 6 (2003) (quoting *Herring v. New York,* 422 U.S. 853,  862 (1975)) (even if at times inartful, counsel's  argument was a legitimate strategy to "'sharpen and clarify the issues for resolution by the trier of fact.'").

In the present case, the jury had heard extensive evidence about the prior DWI convictions. The records custodian from the HCJ and Montgomery County Jail testified about two prior DWI judgments naming Zeedyk.  The State's fingerprint expert linked Zeedyk to the judgments based on her analysis of the fingerprints and identifying information on the judgments. Defense counsel made a tactical decision to acknowledge the evidence of the prior DWI convictions and warn the jury that they could not use the evidence about prior convictions to establish guilt for the charged offense.

The argument was a reasonable defense strategy in a case that presented few options. Zeedyk is not entitled to federal habeas corpus relief on this claim.

**B.      The Claim Based on Failing to Request a Lesser-Included-Offense Instruction**

Zeedyk alleges that defense counsel was deficient in failing to request a jury instruction on a lesser included offense. Zeedyk argues that the State had not met its burden of proof to raise the offense from a misdemeanor to a felony but the jury was instructed to determine whether he was guilty of felony DWI based on the two prior convictions alleged for enhancement. Zeedyk asserts that the jury should have had the option of finding that he was guilty only of a misdemeanor DWI, without the two "void" prior convictions.

The failure to instruct a jury on a lesser included offense in a noncapital state trial is not a federal constitutional matter. *See Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998); *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985); *Easter v. Estelle*, 609 F.2d 756, 758 (5th Cir. 1980) (and cases cited therein); *see also Hopkins v. Reeves*, 524 U.S. 88, 96-97 (1998). Compare *Beck v. Alabama*, 447 U.S. 625, 637 (1980) (holding that applying a state statute precluding consideration of lesser included offenses in capital cases, when evidence supports such a verdict, violates due process). To be entitled to a charge on a lesser included offense under Texas law, a criminal defendant must show (1) that the lesser offense is included within the proof of the offense charged and (2) that there is some evidence that he, if guilty, is guilty only of the lesser included offense. *Rousseau v. Texas*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993).

The state habeas court found:

> 12.   Walker did not request a lesser-included instruction on misdemeanor DWI in the jury charge.
>
> . . .
>
> 17.   The record contains evidence linking the applicant to the previous DWI convictions.
>
> . . .
>
> CONCLUSIONS OF LAW
>
> 7.   Walker was not ineffective for failing to request a lesser-included instruction in the jury charge.  It is sound trial strategy to forgo such a request when there is a possibility of total acquittal if the jury disbelieves the State's proof.  *Lynn v. State*, 860 S.W.2d 599, 603 (Tex. App. - Corpus Christi 1993, pet. ref d).

(Docket Entry No. 10-29, pp. 40-41).  The record shows that this reasonably applied federal law.

The State presented evidence showing that Zeedyk had two prior DWI convictions.  The evidence did not show that he was guilty only of misdemeanor DWI.  In light of the two prior DWI convictions, any request by counsel for an instruction on a lesser included offense would have been futile.  Counsel cannot be deficient for failing to press a frivolous point.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson*, 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999) (citing *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995)).

Defense counsel made a tactical decision to seek an acquittal rather than give the jury the option of finding Zeedyk guilty of misdemeanor DWI.  That decision is not deficient performance or prejudicial.  Zeedyk is not entitled to federal habeas corpus relief on this claim.

**C.     The Claim Based on Failing to Object to the Lack of Definitions**

The jury asked the court to allow it to review the "bullet points" that the State used in closing arguments to explain "intoxication" and "deadly weapon."  Zeedyk alleges that his counsel should

21

have objected to the court's refusal to include in the jury instructions definitions of the terms

"intoxication" and "deadly weapon."

The state habeas court found:

> 13. Walker did not request statutory definitions of "intoxicated" and "deadly weapon" in the jury charge, but the jury charge contains the appropriate statutory definitions of both terms.
>
> . . .
>
> CONCLUSIONS OF LAW
>
> 8. Because the jury charge contains the statutory definitions the applicant claims were improperly omitted, he cannot claim that his counsel was ineffective for failing to request the definitions.
>
> 9. The applicant has not shown that an objection by Walker to the court's charge would have been sustained. Therefore, the applicant cannot show that Walker was ineffective for failing to object to the court's charge. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

(Docket Entry No. 10-29, pp. 40-41). The record supports this result.

To the extent the jury requested definitions, the trial court provided them in the charge and

in the verdict form. (Docket Entry No. 10-19, pp. 42, 47). Any objection to the jury charge would

have been futile. Defense counsel was not deficient in failing to make this objection, and it caused

no prejudice. Zeedyk is not entitled to federal habeas relief on this ground.

**D.      The Claim Based on Failing to Object to the Jury Charge**

Zeedyk alleged that the jury charge did not contain all the elements of the offense. He argues

that the charge lacked the date and the county pertaining to the prior DWI convictions as alleged in

the indictment. Zeedyk argues that trial counsel had a duty to review the charge and object to these

errors.

22

The state habeas court found:

> CONCLUSIONS OF LAW 9.  The applicant has not shown that an objection by Walker to the court's charge would have been sustained. Therefore, the applicant cannot show that Walker was ineffective for failing to object to the court's charge. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

(Docket Entry No. 10-29, p. 41).

Zeedyk has not shown that counsel's failure to object to the charge was deficient or prejudicial. The State introduced copies of judgments and booking information relating to Zeedyk's prior convictions.  The judgments contained the date, the convicting courts, and the county of conviction.  Because the dates on the judgments matched those alleged in the indictment, counsel could reasonably have determined that requesting additional identifying information in the jury charge may have only confirmed the two prior DWI convictions.  Counsel may have decided, as a matter of strategy, to force the jury to sort through the various judgments and booking records to determine if they were properly linked to Zeedyk.  This argument presents no basis for habeas relief.

### E.    Conclusion on Ineffective Assistance of Trial Counsel Claims

The state habeas court concluded that Zeedyk had received reasonably effective assistance of trial counsel.  The Court of Criminal Appeals expressly based its denial of habeas relief on this finding.  These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g).  Zeedyk has not produced clear and convincing evidence to rebut this finding.  The state court's decision was not contrary to clearly established federal law.  Zeedyk is not entitled to habeas relief.  28 U.S.C. § 2254(d)(1).

23

## V.     The Claim of Ineffective Assistance of Appellate Counsel

Zeedyk must show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir. 1999) (quoting *Strickland,* 466 U.S. at 688). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996). A reasonable appellate attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *See Strickland,* 466 U.S. at 690-91. Besides showing deficient performance, to show prejudice, Zeedyk must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694).

Zeedyk alleged that his appellate counsel knew of the trial errors but did not advance a viable argument for reversal. Zeedyk argues that trial counsel objected to the jury instruction's definition of "normal use" in an operating a motor vehicle while intoxicated. Zeedyk preserved this issue based on a timely objection that was overruled. (Reporter's Record, Vol. III, p. 145). Zeedyk argues that the jury was left with two different definitions of an essential element of the offense, resulting in a confusing and misleading misstatement of the law. Zeedyk argues that appellate counsel should have presented this issue on appeal. Zeedyk alleges that appellate counsel failed to argue that it was error to include a nonstatutory definition in the jury charge.

The jury charge included the following definitions:

> A person commits the felony offense of Driving While Intoxicated - 3rd or More if the person is intoxicated while operating a motor vehicle in a public place and the person has previously been convicted

24

two times of any offense relating to the operating of a motor vehicle while intoxicated.

II.

"Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of at least two or more of those substances, or any other substance into the body.

"Motor vehicle" means a device in, on, or by which a person or property is or may be transported or drawn on a highway.

"Public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

"Normal Use" as used herein means the manner in which a normal non-intoxicated person would be able to use his or her mental or physical faculties.

(Docket Entry No. 10-19, p. 42). The term "normal use" is included within the statutory definition of "intoxicated," an essential element of the offense charged.

A trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court may not express "any opinion as to the weight of the evidence." *Id.; Walters v. State,* 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). Because "[j]uries are free to consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses, special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Kirsch v. State,* 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (internal quotations omitted). Texas Government Code, § 311.011, states that statutorily undefined words and phrases are "construed according to the rules of grammar and common usage. Words and phrases that have acquired a

25

technical or particular meaning . . . shall be construed accordingly." Tex. Gov't Code Ann. §

311.011 (West 2005). The Texas Court of Criminal Appeals has explained that jurors may "freely

read [undefined] statutory language to have any meaning which is acceptable in common parlance."

*Kirsch,* 357 S.W.3d at 650. But "terms which have a known and established legal meaning, or which

have acquired a peculiar and appropriate meaning in the law, as where the words used have a

well-known common law meaning, are considered as having been used in their technical sense." *Id.*

Although an appellate court may define a statutorily undefined common term in assessing the

sufficiency of the evidence on appellate review, a trial court's inclusion of that definition in a jury

charge may improperly comment on the weight of the evidence. *Id.* at 651.

If error was present in a jury charge, the error was properly preserved, and it was harmless,

reversal results. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If error was not

preserved at trial, reversal is granted only if the error results in such egregious actual harm that the

appellant did not receive a fair and impartial trial. *Id.*; *Sanchez v. State,* 376 S.W.3d 767, 775 (Tex.

Crim. App. 2012); *Arline v. State,* 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Appellate counsel, J. Grant Stevens, submitted a brief under *Anders v. California,* 386 U.S.

738, 744 (1967), stating that, in his professional opinion, the appeal was without merit and there

were no arguable grounds for reversal on appeal. (Docket Entry No. 10-16). Zeedyk filed a *pro se*

brief. (Docket Entry No. 10-18).

The Ninth Court of Appeals found:

> We have reviewed the record and determined that Zeedyk's
> appeal is wholly frivolous. After examining the clerk's record and
> the reporter's record, we agree that no arguable issues support an
> appeal. *See id.* Therefore, we find it unnecessary to order
> appointment of new counsel to re-brief the appeal. *Compare Stafford*

*v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We affirm the trial court's judgment.

*Zeedyk v. State*, No. 09-09-00536-CR, 2011 WL 1638637 at *1 (Tex. App. – Beaumont 2011, pet. ref'd) (not designated for publication).

> The state habeas court found that:
>
>> 10.  Stevens was not ineffective for failing to address the erroneous submission of the non-statutory definition of "normal use." The applicant has not shown that had Stevens presented the issue to the appellate court, the appellate court would have ruled in the appellant's favor, because such error is harmless. *Baggett v. State*, No. 06-11-00173, 2012 WL 1693858 at *2 (Tex. App. - Texarkana May 14, 2012, no pet. h.) (not yet released for publication).

(Docket Entry No. 10-29, pp. 39-42). The law and record amply support this conclusion.

In *Brown v. State*, 2013 WL 398919 (Tex. App. - Corpus Christi 2013, pet. ref'd) (not designated for publication), the court stated:

> The term "normal use" is included within the statutory definition of "intoxicated," an essential element of the offense charged. *Baggett v. State*, 367 S.W.3d 525, 527 (Tex. App. - Tyler 2012, pet. ref'd). "Normal use" is not defined by statute. *Id.* Thus, the State asks this Court to "assume that it was error to include a non-statutory definition in the jury charge."
> . . . .
>
> The jury charge defined "normal use" as "the manner in which a normal non-intoxicated person would be able to use his or her mental or physical faculties." The instruction caused no harm to appellant because it was "mild, neutral, and an obvious common-sense proposition." *Baggett*, 367 S.W.3d at 529. Moreover, . . . the jury was presented with overwhelming evidence of appellant's guilt. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989) ("[T]he presence of overwhelming evidence of guilt plays a determinative role in resolving the issue."). Thus, the error, if any, was benign and harmless.

*Brown*, 2013 WL 398919 at *7.

27

The jury charge in the present case defined "normal use" as the manner in which a normal, nonintoxicated person would be able to use his or her mental or physical faculties. The instruction caused no harm to Zeedyk because it was "mild, neutral, and an obvious common-sense proposition." *Baggett,* 367 S.W.3d at 529. Moreover, the jury was presented with overwhelming evidence of Zeedyk's guilt. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim. App. 1989) ("[T]he presence of overwhelming evidence of guilt plays a determinative role in resolving the issue."). Any error was harmless. Zeedyk has shown neither deficient performance nor prejudice.

The state court's decision that there was effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly established federal law. Zeedyk has not shown a basis for federal habeas relief. 28 U.S.C. § 2254(d)(1).

## VI.    The Claims Based on Sufficiency of the Evidence (Ground 4)

Zeedyk argues that his conviction is void because the State failed to prove the two prior DWI convictions. He argues that evidence concerning his blood draw violated the Confrontation Clause. He also argues that the State failed to prove that his car was used as a deadly weapon. The respondent argues that these claims are procedurally barred and, alternatively, that they lack merit. (Docket Entry No. 11, Respondent's Motion for Summary Judgment, pp. 1, 4).

Ordinarily, a state prisoner seeking federal habeas relief must first "exhaus[t] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), giving those courts "the first opportunity to address and correct alleged violations of [the] prisoners federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731 (1991). Exhaustion requires that the prisoner "have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997).

28

"Determining whether a petitioner exhausted his claim in state court is a case- and fact-specific inquiry." *Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008) (en banc).

In Texas, a criminal defendant may challenge a conviction by a direct appeal followed by a petition for discretionary review in the Texas Court of Criminal Appeals. Alternatively, a defendant may file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, followed by transmittal to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(c); *see also Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

A federal court generally cannot review the merits of a state prisoner's habeas petition if the petitioner has failed to satisfy the procedural requirements. *See, e.g., Magwood v. Patterson*, —— U.S. ——, 130 S. Ct. 2788, 2801 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."). A habeas claim can be procedurally defaulted in two ways. *Coleman v. Dretke*, 395 F.3d 216, 220 (5th Cir. 2004), *cert. denied*, 546 U.S. 938 (2005); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999).

The first way is by failing to exhaust available state remedies, if the court to which the petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred. *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir. 2010). When "it is obvious that the unexhausted claim would be procedurally barred in state court, [the court] will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review."

*Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Steel v. Young,* 11 F.3d 1518, 1524 (10th Cir. 1993); *see also Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)).

The second way to procedurally default a habeas claim occurs when the claim is presented to the highest available state court but that court has dismissed the claim on an adequate and independent state-law procedural ground instead of deciding it on the merits. *See, e.g., Harris v. Reed,* 489 U.S. 255, 262 (1989). "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied,* 523 U.S. 1139 (1998). The state procedural rule must be "both independent of the merits of the federal claim and an adequate basis for the court's decision." *Finley v. Johnson,* 243 F.3d 215, 218 (5th Cir. 2001). A state procedural rule is an adequate basis for the court's decision only if it is "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Amos v. Scott,* 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), *cert. denied,* 516 U.S. 1005 (1995).

Under Texas law, a challenge to the sufficiency of the evidence used to sustain a felony conviction is not cognizable on an application for a postconviction writ of habeas. When a habeas applicant challenges the sufficiency of the evidence and the Texas Court of Criminal Appeals denies the application without written order, this signifies that the court addressed and rejected the merits of a particular claim. A "dismissal" means that we declined to consider the claim for reasons unrelated to the claims merits. But "[a] disposition is related to the merits if it decides the merits or makes a determination that the merits of the applicant's claims can never be decided." *Id.* (emphasis added). When "an applicant challenges the sufficiency of the evidence on an application for a writ

of habeas corpus, and [the Court] subsequently dispose[s] of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable." *Ex parte Grigsby*, 137 S.W.3d 673 (Tex. Crim. App. 2004).

The state habeas court rejected Zeedyk's argument, stating:

> 2. Issues relating to the sufficiency of the evidence are not cognizable in an application for a writ of habeas corpus. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

> 11. The judgment against the applicant is not void for lack of proof regarding the applicant's prior convictions for DWI or for a lack of proof regarding the deadly weapon finding. Such claims are not cognizable in a writ of habeas corpus. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

(Docket Entry No. 10-29, pp. 41-42).

The Texas Court of Criminal Appeals denied Zeedyk's state application, without written order, on the trial court's findings. Like the state habeas court in *Grigsby*, the state habeas court in this case did not address the merits of Zeedyk's challenge to the sufficiency of the evidence. The state habeas claims were defaulted based on adequate and independent state grounds. This claim is procedurally barred in federal court. *See, e.g., Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005). To overcome the procedural bar, Zeedyk must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 87-91 (1977); *Ries v. Quarterman,* 522 F.3d 517, 523-24 (5th Cir. 2008). Zeedyk offers no arguments that would excuse the procedural default. Zeedyk's sufficiency of the evidence claim is dismissed because it is procedurally barred.

Alternatively, Zeedyk's challenge to the sufficiency of the evidence lacks merit. To review the legal sufficiency of the evidence, a federal court considers whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Credibility choices and conflicting inferences are to be resolved in favor of the factfinder. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000).

This court must determine if the evidence is constitutionally sufficient to support the conviction whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson*, 443 U.S. at 324 n.16). This court need not find that the evidence excluded every reasonable hypothesis of innocence or was wholly inconsistent with every conclusion except that of guilt, if a reasonable trier of fact could have found that the evidence and reasonable inferences drawn from it established guilt beyond a reasonable doubt. *United States v. Salazar*, 958 F.2d 1285, 1294 (5th Cir.), *cert. denied*, 506 U.S. 863 (1992).

The indictment charged that Zeedyk "on or about January 23, 2009, . . . did . . . operate a motor vehicle in a public place while the said defendant was intoxicated." The indictment also charged that "prior to the commission of the foregoing offense, on August 25, 2005, in the County Court at Law #4 of Montgomery County, Texas, the defendant was convicted of an offense relating to the operating of a motor vehicle while intoxicated; and on July 8, 2005, in the County Criminal Court at Law #14 of Harris County, Texas, the defendant was convicted of an offense relating to the operating of a motor vehicle while intoxicated, . . . and that during the commission

of the primary offense alleged above, the defendant did then and there use or exhibit a deadly

weapon, to-wit: a motor vehicle, . . ." (Docket Entry No. 10-29, p. 111).

The state habeas court held:

> 8.   The State Introduced State's Exhibit 14, a copy of the
> applicant's driving record, which listed the applicant's previous
> driving while intoxicated convictions.
>
> 17.   The record contains evidence linking the applicant to the
> previous DWI convictions.
>
> 18.   The record contains evidence that the applicant used a deadly
> weapon during the commission of the offense.
>
> [Conclusions of Law]
>
> 2.   Issues relating to the sufficiency of the evidence are not
> cognizable in an application for a writ of habeas corpus. *Ex parte
> Grigsby,* 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).
>
> 3.   The State proved that the applicant was the person named in
> both of the previous driving while intoxicated convictions. *Flowers
> v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).
>
> 11.   The judgment against the applicant is not void for lack of proof
> regarding the applicant's prior convictions for DWI or for a lack of
> proof regarding the deadly weapon finding.   Such claims are not
> cognizable in a writ of habeas corpus.   *Ex parte Grigsby,* 137
> S.W.3d 673, 674 (Tex. Crim. App. 2004).

(Docket Entry No. 10-29, pp. 40-42).

The record amply supports this result.   The jury heard testimony that Paula Stevens called

911 to report Zeedyk's erratic driving.   The video taken from the arresting officer's patrol vehicle

showed that Zeedyk was unable to maintain his vehicle in a single lane of traffic.   The arresting

officer saw Zeedyk nearly strike another vehicle and come close to colliding with the guardrail.

The arresting officer observed that Zeedyk was slouched in his seat, spoke slowly and in a slurred

manner, gave nonresponsive answers, was drowsy, and failed to provide proper identification. The sobriety tests conducted before arrest showed several signs of intoxication. The arresting officer searched Zeedyk's vehicle and recovered a pill bottle containing two Valium, two Xanax, three hydrocodone, 13 Somas, and nine acetaminophen. The State proved that Zeedyk had two prior DWI convictions. The State also proved that Zeedyk was using the car as a deadly weapon by driving it in a manner capable of causing serious bodily injury.

The evidence was sufficient to support Zeedyk's DWI conviction. Zeedyk is not entitled to habeas relief on his sufficiency of the evidence claim. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994).

## VII.    Conclusion

The respondent's Motion for Summary Judgment, (Docket Entry No. 11), is granted. Zeedyk's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* As the Supreme Court made

clear in its decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a certificate of appealability is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." When considering a request for a certificate of appealability, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342.

Because Zeedyk has not made the necessary showing, this court will not issue a certificate of appealability.

SIGNED on March 11, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge